Hey everyone, we are about to proceed and call our first case. As you may know, Judge Vineski is with us through video from Scranton, Pennsylvania. Judge Vineski, are you coming in? Are we coming in clear for you? Yes, you are coming in very clear and hopefully I am now as well. Thank you. All right, call the first case. United States v. Willis. Good morning, Your Honor. May it please the Court, Jeffrey Molinaro, I represent the appellant in this case, Louis Willis. May I reserve two minutes for rebuttal? Thank you, Your Honor. This case involves the conviction of Mr. Willis on two counts of bribery in violation of 18 U.S.C. 666 and two counts of extortion underneath the Hobbs Act. Put simply, amongst the many issues before the District Court, before this Court, there are a couple of key issues we want to discuss today. Mr. Willis' convictions for both cannot stand for a variety of reasons. With regard to bribery and 666, put simply, the evidence before the District Court demonstrated that Mr. Willis was solely the agent of a branch of government which did not receive any federal funding. Instead, those federal funds were received by the Department of Finance of the Virgin Islands. Could you clarify that for me? Are you saying that he, as a director for the legislature, did not receive funds from the government of the United States? Not that, well, yes, he did not receive any federal funding, but more so the branch of government to which he is an employee and an agent to the person under 18 666, the legislative branch, Your Honor. Mrs. Gottlieb testified and Mr. Benjamin testified before the District Court that federal funds came into the executive branch's Department of Finance, a separate territorial agency, maintained federal funds. Those federal funds were segregated, not commingled in any way with the general fund. The general fund is solely funded through territorial taxes and licensing fees. Oh, I'm sorry, Your Honor. You're not suggesting that the legislature is not part of the government? Not that the legislature is not part of the government, Your Honor, but that the legislature is a separate branch of government and that to adopt a definition under the statute, in fact, the statute doesn't define government at all. It only defines a governmental agency as a subdivision of the separate branches of government or, excuse me, as an agency underneath the separate branches of government. So what we have here is when we look at the basic definition of what an agent is, no matter how broad 666 is interpreted. You said the money. You're talking about $150 million that the U.S. sends to the government of the Virgin Islands? Yes, Your Honor. The money, the federal funds in this case would be the $150 million that was sent to the Virgin Islands, which the evidence in the record shows was maintained by the Virgin Islands Department of Finance. And the record evidence also shows that the legislature doesn't receive those funds, doesn't have authority to own, possess, control. They're not under their care. Are you saying that the money that was at issue here was not U.S. government monies? It was monies that were raised, as it were, by the Virgin Islands? The money which Mr. Willis was, I guess, convicted of extorting would be money of general funds, Your Honor. If I said that the money was used for the necessary and proper expenses of the legislature, the executive, and the judiciary, you would disagree with that? Your Honor, the problem with that analysis is there was no evidence in the record of what the federal funds were used for. The only thing in the record that we have is that the federal funds came into the Department of Finance. Those funds were kept separate and apart from any funds from the general fund which the legislature's budget is allocated. In fact, the evidence we have through the testimony of Deborah Gottlieb and through Michael Benjamin is that the legislature was funded through general funds, and once those general funds are budgeted to the legislature, they're actually put in a legislative bank account. The legislature operates off of these general funds. So you have an issue where you have an employee who no evidence in the record shows that any other branch of government or any territorial agency had an ability to bind or control Mr. Willis. Instead, what we see is solely employee of the legislature, solely under the control of the Senate president. In fact, there's even an arguable argument to say that Mr. Willis didn't have the ability to actually bind the legislature because the testimony below by Ms. Tharps showed that, or excuse me, Mr. Benjamin showed that either the Senate president or the legislative business director had to sign off on any contract that Mr. Willis presented. He authorized the contract, right? Right. He was the one who was presenting. He was solely responsible for procuring the bids, yes, Your Honor. And he could bind the legislature by awarding the bids? So long as the Senate president or the business director approved because it required, the evidence showed that it required every contract that went before the legislature required two signatures of either the legislative director, which was Mr. Willis, the business director, and or the Senate president. So it's your position the money spent were not U.S. government monies, they were Virgin Island monies? Well, yes, the money spent were not U.S. government, were not federal funds, they were territorial funds because those funds solely derived out of local sources. The issue- I don't understand that. That appears to go to the heart of the case. Who are you anyway? Yes. Because if we agree with you, then federal funds were not involved and therefore 866 is not the appropriate statute under which he was convicted. Correct, Your Honor. How this case- He was convicted under 866, but you say the conviction should be set aside because 866 does not apply. Correct. The lower court relied on United States versus Fernandez and the government does as well and it's the answer brief. But Fernandez is distinguishable because Fernandez dealt with the case of a elected representative, a senator of the Puerto Rican legislature. And what the government is- speaks for the government as a whole. In fact, it says it's- that an elected official is one of the limited officials that can be said to speak for the state. And if we finish that sentence, it says as opposed to employees of localities and agencies that exist throughout every branch of government. Was the restoration of the legislative building involved? I believe so. Your argument is that not a single dollar of federal funds was used in connection with the restoration of that building? My understanding is the evidence showed that only local funds were allocated to the legislature and that that territorial project was funded solely out of legislative general funds. Now- What are legislative general funds? Those are funds that are derived solely from local resources as opposed to federal funds. They're- A single dollar of federal money is used for restoration of public buildings in the Virgin I don't know if that came out in the evidence below. What I do know is that the record below, or at least our understanding of the record below, shows that this restoration project was funded by the resources, the funds that support the legislature, which are purely legislative or general funds, local funds. So there's a different set of rules that applies to that money? Isn't it all fungible? You're saying this is a discrete pot of money, a different set of rules applies to this discrete pot of money? Your Honor, it has to be federal funds, yes. The funds have to be- the ultimate control of the federal funds- let me rephrase. It's not that- yes, money is fungible. However, it has to be that you have to be an agent of an entity which controls federal funds. Are you agreeing that he was an agent of the entity being the legislature? Are you agreeing with that? Oh, we have no argument that he was not an agent. It was whether he was an agent of an entity which was in receipt of federal funds. The legislature receives no federal funding. That's what the evidence below showed. It solely funded out of local sources. Now, Sinea, out of the D.C. District Court, faced a similar issue. Sinea had two co-defendants. One was an employee of the legislature and one was actually a representative of the American Samoan government. And what Sinea says is, if we read the statute to apply to all employees, no matter where they are in the system, regardless of what agency holds the federal funds, you're violating the rule because you combine governments and agencies together. The statute clearly recognizes there's a difference between an agent of the government and an agent of the agency. However, basic agency principles still apply. And that's why they said a legislator, as opposed to a mere employee, could be considered an agent. Because a legislator, acting as a co-equal power, a co-equal branch of government, can bind agencies. In fact, the exact language was, a legislator who misuses his legislative authority to facilitate the corrupt practices affecting agency programs that receive federal funds may well fall within 666 because under those circumstances, the legislator acts at the government level and not with respect to any particular funds. An elected legislator, through legislation, has the ability to affect the Department of Finance. An employee doesn't. I have a suspicion Mr. Weitz is going to take a different view about the issue of funds. And he will probably be arguing that, yes, what would be your position? Let's assume that's true. My position would be that the testimony of Deborah Gottlieb says that the funds used in this case were out of the general fund and the legislature was funded out of the general fund, Your Honor. So we lose that argument. Is the game over? No, Your Honor. With regard to the remaining convictions, first, in this case, because of the levels of separation between Mr. Willis and the Department of Finance, the entity which actually houses the funds, you turn the statute into the equivalent of a general police power, which would violate the Tenth Amendment. The Tenth Amendment, there is an open issue as to whether it applies in the Virgin Islands. We have the position that it does based on the revised Organic Act of 54 and 84. Are territories included in the Fourth Amendment? Directly, no, Your Honor. But the Supreme Court has said there must be a rational basis under the territories clause to treat the territories different. The Tenth Amendment just refers to states. Correct, Your Honor. It does just refer to states. What principle of federalism violate the Tenth Amendment applies here? The principle would be that you have an abstention of purely local funds. And you have then every government official, no matter where the funds are placed, be it in the administrative agency of the territory or in a branch of government, it wouldn't matter. Every territorial official, no matter what bribe they took, would then be considered an agent of the government as a whole. The government would be considered to have federal funds, and you would turn it into a general bribery anti-corruption statute. But moving on to the Hobbs Act, Your Honor, as applied to this case, we feel that the Hobbs Act violates the after that the Commerce Clause as applied to extortion doesn't or is not violated. However, when we look at the basis of Claussen and the basis of Walker, which is a much more recent case, I think 10 years later, those basis are flawed. First... Are you saying that Commerce or the Commerce Clause was not implicated in this case? When we look at the traditional definition of commerce as the founders would have defined it, yes, Your Honor, we are saying that commerce is not implicated here because we go down the slippery slope of every crime has an economic effect. And that's where Judge Higginbom in Hickman and in McFarland out of the Fifth Circuit, the dissents, they really flush this issue out and say that when we're looking at what is commerce, commerce is the buying and selling of goods. I mean, this involves a major restoration of a public facility. Doesn't that involve the buying, purchasing of materials? But it's the act itself, if Mr... Under the logic that... Which act? It would be the act of extortion, Your Honor. What the criminal activity is, be it extortion or murder or otherwise. Your position is that extortion did not have an impact on commerce? No. The position is that the extortion is not considered commercial activity such that it can be aggregated so that we can get to a substantial effect in commerce. It only... Morrison makes clear non-commercial conduct cannot be aggregated. Rice, which Walker relies on, which this court relies on in about 2012, argues, relies on Rice. However, Rice says, well, we're talking about non-commercial activity that regulates a greater marketplace. The cases addressing this issue say that even remote attenuated involvement in is that's exactly the problem, is that you are so remote with a de minimis requirement, you can only combine it if it's commercial conduct. If it's non-commercial conduct, Morrison says it would not. You reserved time for me? I did, Your Honor. I just want to see if Judge Vanaskie has a question or two for you. Judge Vanaskie? I have no questions at this time. Thank you, Judge. Thank you. Thank you, Your Honor. Thank you. Mr. Weitz? Good morning, and may it please the Court. Lola Willis accepted bribes in regard to his employment as the Executive Director of the Legislature of the Virgin Islands. In his capacity as an agent of the government of the Virgin Islands, he extorted contractors and accepted cash as well as other items of value. Doing so, he violated both 18 U.S.C. 666 and 18 U.S.C. 1951. Why don't you address Mr. Molinaro's argument with respect to the fact that these were not federal funds? These were not federal funds, or at least there's no evidence in the record that they were federal funds used directly for the renovation of the legislature. I agree with that proposition. As far as the record is concerned, I agree. However, Your Honor, that is not the issue in this case, and that is not the issue that implicates Section 666. There is no requirement, and no court has ever held that there's a requirement that Section 666 requires that the illicit conduct itself directly implicate federal funds. There are other statutes that are used for theft or misuse or misapplication of federal funds. 666 involves state and territorial and local governments of whom their agents, their employees, their representatives, their directors are engaging in bribery or fraud. And that is the purpose of 666, and that's why Congress passed it, to allow the federal government to preserve the integrity of its federal funds, even when they are indirectly implicated by bribery and fraud. Are they indirectly implicated here, and if so, how? Your Honor, as Judge Restrepo said, money is fungible, and that's been the position of the Supreme Court in the three 666 cases it's taken, Sabri, Salinas, and Fisher. And ultimately, the integrity of federal funds, of which the government of the Virgin Islands receives over $150 million a year, is implicated when corrupt stewards are at the helm of making spending decisions on behalf of the government of the Virgin Islands. So even though federal funds may not have been directly misused here, that's not the standard. Your Honor, what the government has to prove, and the reason that Congress passed this statute, and the reason this statute has been used again and again and again, is that when state and local officials whose governments that represent receive federal funds, when those officials choose to misuse any funds, it necessarily implicates the federal funds by extension. So whether the local government, the Virgin Islands Legislature, actually received federal funds, you're saying is not relevant? Whether the government of the Virgin Islands received federal funds is absolutely relevant, and a jury found that it did. A jury was presented with this question. In fact, it's one of the elements of 18 U.S.C. 666, and a jury concluded unanimously that it did. Whether the actual renovation of the legislature itself, the brick and mortar work that was happening right over here, whether that involved federal funds is immaterial, Your Honor. So as long as the entity, in this case the Virgin Islands, is receiving federal funds, the fact that local funds were used is not at the moment? It's simply not relevant to this Court's determination, Your Honor. As for the other issues raised in regard to 666, Mr. Molinaro and Mr. Willis have claimed that he was not an agent of the government, but he was merely an agent of the legislature. That argument doesn't pass muster, Your Honor. Ultimately, the government is composed of agencies and it's composed of branches, and it's fundamental to our understanding of representative government that the legislature and the executive are co-equal branches of the same government. There's no budget that can be passed without the involvement of both the legislature and the executive. For the Department of Finance to have the ability, for it to have mandate to even spend those funds, it needs the assent of the legislature. To view the legislature as some sort of independent commission or independent agency flies in the face of all of our understandings of how a Republican form of government works. When the money is given by the federal government to the territorial government, can you follow the trail for us? How does that work? It's deposited generally in the Department of Finance, is my understanding. It's that money or other departments of the executive branch. Now, the reason for that, Your Honor, is in the same way that in any government, there's an agency that disperses money and disperses it out to different parts of the government. But under the very narrow reading that Mr. Willis proposes for 666, only state Department of Finance officials in the Virgin Islands and presumably in other states and other localities would be implicated by 666. Under the way that every government is set up, there's generally an agency that is the clearinghouse and is the warehouse for all funds that come in, whether they're federal funds or they're local funds that come from taxes or bonding or other sources. That's been dispersed among different government agencies and branches and subdivisions. The cramped reading that Mr. Willis proposes would essentially take out of 666 everybody who's not somehow directly involved in dealing with federal funds. That's not what Congress intended when it passed the statute. It's not what the Supreme Court or the Third Circuit has ever found. In fact, it's not what any appellate court has ever found in regard to the construction of the statute. I always thought that the legislature has the power of the purse. Is the legislature, the branch of government that determines, that allocates or determines where the funds are distributed? The legislature is the appropriating branch of the government. It does so in Concord with the executive branch. And the government of the Virgin Islands is set up similarly to every state and federal government that we recognize and that the legislature does have the power of the purse. However, the court doesn't even need to reach that issue because Mr. Willis is an agent of the government, doesn't need to have the power to spend money. He doesn't need to have the power to bind the government. Now, in this case, he did have that power and he did bind that government and he did spend money. But the court wouldn't even need necessarily to reach that because under United States versus Brand, which is a case that this court decided about 20 years ago, the court made very clear that 666 applies to everybody from the lowest clerk to the highest administrator of a covered entity of a government that receives federal funds. What do you make of counsel's argument that First Circuit case, I believe is Fernandez making a distinction between an elected legislator and employee? Is there a distinction being made there? There is not, Your Honor. The government submits that that is that the Fernandez court was dealing with a specific issue, which was a legislator in Puerto Rico who was accused and convicted under 18 U.S.C. 666. In reading 18 U.S.C. 666 subsection D1, which is the section that addresses the representative that Fernandez was found to be, there's a full list of all the, an inclusive list, Your Honor, of all the types of agents that could exist for a government. That includes employee, servant, director, officer, representative. Just because it says representative doesn't limit it to representative, Your Honor. In fact, it's a much more expansive list. And again, it's an inclusive list. It doesn't exclude anything that's not specifically in there. Mr. Willis was an employee of the government of the Virgin Islands. He was the executive director of the government of the Virgin Islands. He falls specifically within the explicit text of the statute. And certainly a jury was able to find, as it was asked to do, that he was an agent of the government of the Virgin Islands. You have a lot of power with respect to contracts. Is there not a regulation that governs or dictates which contracts can be, have to be out for bidding and which do not? Mr. Willis, the evidence of trial showed in the record reflects that Mr. Willis had plenary power over issuing contracts on behalf of the legislature and on behalf of the government with regard to the renovation of the legislature. He had sole signatory authority and he had contracts. And in fact, many of those contracts were issued without any form of bidding process. No problem with that. As it happens, Your Honor, it was adduced at trial that that was a problem and that the legislature later fixed that largely because Mr. Willis was giving out these no-bid contracts without any checks or balances. At the time, Mr. Willis had plenary power. But again, that's not the issue in this case. The issue is whether he dispersed those contracts and in exchange received things of value or bribes. Let me ask you about the 404B issue. Yes, Your Honor. Did the government give the defense notice that they were going to introduce this 404B evidence? Yes, Your Honor, several months before trial. Prior to trial, all right. And was there any discussion as to a limiting instruction in this case? There was discussion of a limiting instruction. The government, in fact, proposed a limiting instruction in its notice of 404B and again, in argument prior to trial. And there was a limiting instruction given in this case. During the charge, though, right? During the jury charge, yes, Your Honor. There was no contemporaneous instruction given? There was no contemporaneous instruction given. However, Your Honor, the contemporaneous instruction, that is something that may be ideal to give a contemporaneous instruction. However, there are reasons that a court may not want to give a contemporaneous instruction. A court may not want to draw attention to the 404B specifically. The jury was instructed it's the limited purposes for which it can use this evidence. It was clear that it could only use it for limited purposes. And presuming that the jury followed these instructions, the government would submit that the failure to give a limiting instruction contemporaneous to the introduction of the evidence was at worst harmless error. Did the district court articulate a rationale for the admission of the 404B evidences we had required in our recent precedents? Yes, Your Honor. The district courts stated that it spoke to the intent of the defendant in this case. And the district court noted that it accepted the government's rationales for the inclusion of 404B. In the record, the... Haven't we said that it's not sufficient for a district court merely to say it's accepted the district court's, the government's rationale? Haven't we said instead that we are asking the district courts to tell us why in the district court's judgment the evidence is appropriate purposes and that no inference in the chain of inferences is propensity to commit the crime? Yes, Your Honor. This court has ordered district courts to do so. At worst, again, this is a harmless error. The district court considered this issue fully. It solicited not only after the original notice of intent to use 404B, it also received briefing on the issue, both written briefing and oral briefing. It submitted ex parte submissions from the parties. It requested those submissions about two weeks prior to trial. It then engaged in more argument on the 404B issue. The question of whether the district court failed to articulate its own reasons on the record, that's something the district court should have done but did not do as fulsomely as the Third Circuit may have requested in this case. However, at the end of the day, that procedural error is harmless. In other cases where district courts have failed to articulate the precise reasons, the precise chain of inferences, but the government has proffered this for a particular appropriate non-propensity purpose, the failure to follow the procedural rules is not in and of itself enough to disturb a jury conviction and is not in and of itself enough to cast doubt on the fairness of the trial or the reasonableness of the jury's verdict. So in the briefs, in defense counsel's brief, I believe they argued, I'm sure you just ran out of time here, that the quid pro quo was not alleged in the indictment. What's your position on that? The quid pro quo was alleged clearly in the indictment. In counts one, three, and five, which are the 666 counts, it was made very clear that this was in, that the things of value which Mr. Willis received, cash, air conditioner, services related to air conditioners were received in exchange or were solicited in exchange for favorable treatment in regard to contracts awarded by the government of the Virgin Islands. That is sufficient to allege the quid pro quo under Federal Rule 7. Now, there's no requirement that the government allege a quid pro quo. The Third Circuit has never so held. However, even if the Third Circuit were to so hold, and even if this court were to so hold, whether today or in the future, this indictment satisfies Rule 7 inasmuch as it makes very clear to the defendant or made very clear to Mr. Willis that what he was charged with was not accepting of gratuity. It was accepting things of value or soliciting things of value in exchange for favorable treatment on these contracts. There was no ambiguity as to which contracts we were talking about here. There was no ambiguity as to which contracts he was charged with influencing. And the quid pro quo element is easily satisfied by the face of the indictment alone. Anything else, Mr. Weitz? I can address the Hobbs Act issue briefly, if this court so wishes. The Tenth Amendment, as this court has realized, doesn't apply to territories. It very clearly by its own explicit text applies only to the states. The Virgin Islands is not a state. And so to the degree there is a Tenth Amendment issue here, it should be relegated away from this case because, again, it has nothing to do with the territories like the Virgin Islands. As for the commerce aspect, it's quite clear that even intra-territorial commerce by virtue of Congress's plenary power over the territories would be covered. However, I would also point the court's attention again to United States v. Haywood, which is a Virgin Islands Hobbs Act case in which this court found that the mere presence of beer in a store that was subject to a Hobbs Act robbery was sufficient as long as that beer had traveled in interstate or foreign commerce to satisfy the interstate commerce element of the Hobbs Act. Thank you, Mr. Weitz. Thank you. Mr. Molinaro. Thank you, Your Honor. Briefly, a couple of points in rebuttal. With regard to 666, it's not the issue of Mr. Willis's control of the funds. We know that case law is clear. An agent doesn't have to control federal funds to be hit with a bribery conviction under 666. It is who is he the agent of and does that entity control federal funds? And the only evidence we have here is that there are federal funds sitting in the Department of Finance. There was no evidence presented at trial of how those funds are allocated out. There was no evidence at trial that he was an agent of the Department of Finance. Suniya addresses this head on. Suniya says if we say that an employee of the government is also an employee of the agency which holds funds, even though he doesn't work there, then you have a situation where you're violating the rule against surplusage. Agencies are treated as the equivalent of governments under that reading. Sounds like the government is arguing to us that you're adding an element here. You're adding the element that the monies at issue have to be the federal monies. Aren't you doing that? No, Your Honor. We're arguing that the element at issue is who received the federal funds. And since Mr. Willis is only an agent of the legislature and federal funds in this case, the only evidence we have is... Of the Virgin Islands. Of the Virgin Islands. Nobody disputes the Virgin Islands received these monies. However, Your Honor, Suniya says that you have to be an agency who receives the money. But you're not contending, are you, that the legislature is an agency? Isn't it just part and parcel of the government? No, Your Honor. I'm not arguing that. What we are saying is that the Department of Finance is a governmental agency. And if we say... Who is in the sole possession of the federal funds. There was no evidence in this case that those federal funds went anywhere else. And therefore, Mr. Willis has to be an agent of that agency. Briefly, with 404B, in the few seconds I have left... Can't you infer, reasonably infer, that the legislature, as one of the three branches of government, received federal funds out of that $150 million that the U.S. government gave to the Virgin Islands? We would be able to infer that if there wasn't direct testimony on record saying that the Virgin Islands government is funded solely out of the general fund, then there's a level of inference there. It doesn't have to be solely funded. What if they received a very small amount, let's say $10? Your Honor, if we go down the road of indirect federal funds, then we have the Fisher-McLean argument, which we fleshed out in our brief more fully. If the court will grant me the indulgence of proceeding, I see I'm over time. Let me go back to Judge VanAskey's question. You're not arguing that the legislature is not part of the government of the Virgin Islands? No, Your Honor. We are arguing that Mr. Willis is solely an agent of the legislature. Now, if the court is to find that the statute doesn't distinguish between the branches and that government includes all three branches, then Mr. Willis's conviction still cannot stand under the rationale of Sunio because there's a lack of evidence in this case that the government, other than the Department of Finance, holds or possess or operates out of those federal funds. It's a simple, it's an evidentiary, a lack of evidentiary issue. If foundation was laid in the trial court that said, okay, the federal funds came into the Department of Finance. Who spends the federal funds? Oh, the executive branch does. And what agencies spend the federal funds? Then it's a stronger case that the government would have, but here all we have is funds came in, funds sit in an administrative agency, and if we say an employee of the government as a whole is now an employee of the agency which receives the funds, then Sunio says you are violating the rule of surplusage. There's no distinct distinction between the government and the agency. So is the logical conclusion of your argument that only an employee of the Department of Finance could be prosecuted under 666? No, Your Honor. The logical conclusion of our argument is either, one, that a Department of Finance, an agent of the Department of Finance could, or two, evidence needs to be established at the trial court which shows that federal funds which come in and are possessed solely by the Department of Finance, that those federal funds are used by the government as a whole. And the government is in possession of those funds, not that the funds come into the Department of Finance and then they go to the Department of Motor Vehicles and they sit through individual agencies because the statute itself makes a distinction between the government as a whole and agents of the government as a whole and agents of individual agencies. Okay, Mr. Molinaro, thank you very much. Thank you, Your Honor. And we'll call the next case, Hargis v. Ferocious and Impetuous.